**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| FRIENDS OF ANIMALS,<br><br>Plaintiffs,<br><br>v.<br><br>WILBUR ROSS, in his official capacity as Secretary of Commerce,<br><br>and<br><br>NATIONAL MARINE FISHERIES SERVICE, an agency within the United States Department of Commerce<br><br>Defendants. | Civil Action No.<br><br>3:20-cv-01312 (AWT)<br><br><br><br>December 17, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF PARTIALLY UNOPPOSED MOTION TO INTERVENE AS DEFENDANT BY THE SEA RESEARCH FOUNDATION INC. D/B/A MYSTIC AQUARIUM**

Pursuant to Fed. R. Civ. P. 24, Sea Research Foundation, Inc. d/b/a Mystic Aquarium ("Mystic") submits this memorandum of law in support its Motion to Intervene (the "Motion") as a defendant in this case.

Mystic is the holder of the wildlife import permit being judicially reviewed. Federal Defendants National Marine Fisheries Service and Secretary of Commerce Wilbur Ross (collectively, "NMFS"), which granted the permit to Mystic, take no position on the intervention motion. Plaintiff Friends of Animals does not oppose Mystic being granted permissive intervention in the case under Fed. R. Civ. P. 24(b), but did oppose any participation by Mystic in the resolution of Plaintiff's pending motion for a preliminary injunction (ECF Doc. 17) on the basis of alleged untimeliness. Accordingly, Mystic below provides support for both (1) its

unopposed intervention in the case and (2) its request to participate in the Court's resolution of Plaintiff's preliminary injunction motion, which is opposed.[1]

The Motion is further supported by the Declaration of Mystic President Stephen Coan, PhD being submitted contemporaneously ("Coan Dec.").

## NATURE OF THE CASE

Mystic is an aquarium in Mystic, Connecticut. On August 27, 2020, after a hotly contested agency adjudicatory proceeding, NMFS granted Mystic a permit under the Marine Mammal Protection Act of 1972 ("MMPA"), 16 U.S.C. §§ 1361 *et seq.* authorizing Mystic to import five (5) beluga whales from Marineland of Canada, Inc. for purposes of important scientific research with incidental public display. See Plaintiff's Complaint, ¶ 2. Plaintiff filed comments opposing the grant of the permit. *Id.*, ¶ 82. Plaintiff now sues NMFS under the Administrative Procedure Act, 5 U.S.C. § 706, for judicial review of the grant of the permit. *Id.* ¶¶ 141-156. Plaintiff seeks injunctive and declaratory relief, including an order vacating and enjoining the permits, which would prevent Mystic from bringing the beluga whales from Canada to their new home at Mystic. *Id.* ("Prayer for Relief").

## FACTUAL BACKGROUND

The Declaration of Mystic President Stephen Coan, PhD, supplied with this Motion, reviews Mystic's zoological programs and expertise, and its successful proposal to NMFS to import for scientific research with incidental public display the five beluga whales to be housed with the three belugas already cared for at Mystic. *See* Coan Dec., ¶¶ 4-14. Dr. Coan's

---

[1] Because this case is at an early stage, and the Federal Defendants have not yet filed their Rule 12 response pleading, Mystic is concurrently filing a motion to extend the time under Fed. R. Civ. P. 24(c) for it to file a proposed defensive pleading until one week after the Federal Defendants file their Rule 12 response pleading on January 6, 2021 (ECF Doc. 24).

Declaration reviews Mystic's extensive focused interest in and experience in beluga whale research. *Id.*, ¶¶ 9-10, 12. NMFS found in issuing the permit that Mystic has the resources to properly care for the belugas. ECF Doc. 22-2, pp. 23-34.[2] Other relevant facts are discussed in the Argument below.

## ARGUMENT

### I. Mystic Satisfies Rule 24(b) Permissive Intervention Criteria and its Request for Intervention in the Case In Chief is Unopposed by any Party.

Mystic has a great deal at stake in maintaining its NMFS permit to import beluga whales, and thus should be granted intervention to defend its interests. *See* Coan Dec., ¶¶ 16-17, 21. Because no party opposes the grant of permissive intervention, Mystic briefs only the standard for permissive intervention under Fed. R. Civ. P. 24(b), while reserving the right to file a motion for intervention as of right should the Court request such briefing, or should permissive intervention be denied.[3] In a mirror image procedural situation, the Northern District of Georgia granted permissive intervention to environmental organizations which sought to defend their success in persuading NMFS to deny a beluga import permit to Georgia Aquarium, in that aquarium's subsequent lawsuit against NMFS for judicial review of the permit denial. *Georgia Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 691-92 (N.D. Ga. 2014) That Court bypassed the intervention as-of-right inquiry by finding the permissive intervention test satisfied, holding that it need not

---

2 Plaintiff wrongly claims that Mystic is in poor financial condition due to Covid closures and restrictions. *See* Plaintiffs' PI brief at 29-30. Federal Defendants rebut this. Federal.PI.Opp. at 29-30. Although not mentioned by either of those parties, the State of Connecticut has granted a substantial line of credit to Mystic, a fact announced by the Governor on September 22, 2020 that the Court can judicially notice. https://www.nbcconnecticut.com/news/local/lamont-to-make-announcement-about-future-of-mystic-aquarium/2335983/ (last viewed Dec. 15 2020).

3 Mystic believes it satisfies the intervention as of right elements under Fed. R. Civ. P. 24(a)(2). Because Plaintiff has determined not to oppose permissive intervention, Mystic only briefs the permissive intervention standard.

address the intervention-as-of-right elements. *Id.* This motion seeks to follow the approach to intervention taken in that case.

Because of its significant interests at risk in this lawsuit, and Mystic's unique knowledge and ability, as an aquarium that actually cares for, transports, and conducts research with beluga whales, to effectively supplement NMFS's defense, the Court should grant Mystic permissive intervention under Fed. R. Civ. P. 24(b), which provides:

> On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact . . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b); *see* Coan Dec. ¶¶ 5, 8-10 (detailing Mystic's experience, knowledge, and abilities). "The permissive nature of such intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case." *Railroad Trainmen v. B&O Railroad*, 331 U.S. 519, 524 (1947).

Rule 24(b)'s requirement that the intervenor seek to litigate a common issue or fact already present in the action is easily satisfied. Plaintiff has put the lawfulness of Mystic's permit at issue through Plaintiff's Complaint against NMFS, and Mystic seeks to defend that permit. The lawfulness of Mystic's permit is the common issue in the main action and that issue warrants intervention.

The "principal consideration" in deciding a motion for permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Allco Finance Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D.Conn. 2014). Further, the text of Rule 24(b) requires that the motion to intervene be "timely." As this lawsuit is in the earliest stages, this motion is plainly timely. As noted above, intervention is unopposed, for purposes other than the preliminary injunction hearing. Plaintiff's narrow objection to timeliness is with respect to

Mystic's participation in the preliminary injunction motion/hearing only, and that narrow objection is addressed in Point II of this Memorandum below.

"Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). Plaintiff filed its Complaint on September 3, 2020. The time for Defendant NMFS to file its response to the lawsuit under Rule 12 has not yet arrived, and is set at January 6, 2021. The Court has not entered a scheduling order for a final decision on the merits and the Administrative Record has not yet been filed. Intervention will not delay the proceedings or prejudice any existing parties. Mystic does not seek postponement of any scheduling dates, including the pending preliminary injunction hearing date, and its request as the permit holder to participate in the case should surprise no one.

While any potential for delay or prejudice remains "the principal consideration," *Allco Finance Ltd., supra*, another decision in this district, identified three "factors" in evaluating a motion for permissive intervention that are, to a certain extent, similar to the elements of intervention as of right, but are less demanding and more flexible:

> (1) the nature and extent of the intervenors' interests, (2) the degree to which those interests are adequately represented by other parties, and (3) whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Connecticut v. Pruitt*, No. 3:17CV796 (WWE), 2017 WL 11572824, at *3 (D. Conn. Sept. 1, 2017) ("Pruitt"). There is debate within the District as to the extent the second factor (regarding degree of inadequacy of representation) is actually relevant. "Rule 24(b) does not list inadequacy of representation as one of the considerations for the court" and "it is clearly a minor factor at most." *Allco Finance Ltd*., 300 F.R.D. at 88 (quoting *U.S. v. Columbia Pictures Indus., Inc*., 88 F.R.D. 186, 189 (S.D.N.Y. 1980). As with intervention as of right, district courts should construe Rule

24(b) liberally and allow permissive intervention where appropriate. *Pruitt*, 2017 WL 11572824, at *3 (citing *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)).

Turning to the first *Pruitt* factor (protectable interest), although Rule 24(b) itself does not define the type of interest that can be appropriately defended by permissive intervention, a "significantly protectable interest" would satisfy the parallel "intervention as of right" element and, therefore, surely be sufficient for permissive intervention as well. The Second Circuit has found the parallel intervention as of right element satisfied where "there is a substantial likelihood that the claims and interests of the proposed intervenors…may be adversely affected." *Oneida Indian Nation of Wisconsin v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984). It has also, unsurprisingly, held that a party that seeks and obtains a permit from a regulatory agency has a protectible interest in that permit. *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2nd Cir. 1995). Mystic's right to continuation of its MMPA import permit (in the absence of any finding by NMFS of violations of the permit) is protected by law and is directly related to the instant lawsuit. 16 U.S.C. § 1374. This *Pruitt* factor strongly supports permissive intervention.

Further, any success by Plaintiffs in this case will, as a practical matter, impair or impede Mystic's ability to protect its interests. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, advisory comm. note to 1966 amendment (cited in *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prod., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984). Here, if Plaintiffs prevail and the permit is set aside, or judicially limited in some way, Mystic may be barred from importing the belugas or may be required to alter its scientific research or its plans to care for the whales. Coan Dec. ¶¶ 12, 16-17, 21. ***The research cannot be achieved by studying wild populations.*** *See* Fed.PI.Opp. at 9 (ECF Doc. 23; Coan Dec. ¶ 17. Therefore, denial of this

Motion would impair Mystic's ability to protect its significant interest in its MMPA import permit and its care and study of the belugas. *See also* 5 U.S.C. § 558 (establishing certain due process rights of license holders under the Administrative Procedure Act).

As a practical matter, discussion of the second *Pruitt* factor (degree to which existing parties inadequately represent Mystic) substantially overlaps with discussion of the third *Pruitt* factor (degree to which the applicant intervenor can "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented"). *Pruitt*, 2017 WL 11572824, at *3. Further, as noted, degree of inadequacy of representation is at most a "minor factor" in the permissive intervention inquiry. *Allco Finance Ltd*., 300 F.R.D. at 88. Mystic accordingly addresses the second and third *Pruitt* factors in combination.[4]

This is a situation in which a plaintiff with narrow private interests (Friends of Animals), unsuccessful in a hotly contested adjudicatory proceeding before an agency (NMFS), has now appealed the agency's decision. Now, Mystic, a party with equally narrow but opposing private interests seeks to intervene to protect the agency judgment it won at great effort and expense, much like an appellee in an ordinary civil case that moves from the district court to the court of appeals. Although the rulings of NMFS, as regulator, are currently in favor of Mystic, and even as Mystic has complied completely with them, there remain disagreements on the premises of NMFS's rulings and some of these are central to Plaintiff's case. Most notably, NMFS concluded that one or both of the parents of the captive-born whales to be imported originated from a stock

---

[4] Even where intervention as of right is sought, the applicant intervenor need only show that its representation by existing parties "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n.10 (1972). Only a "minimal" showing of the possibility of inadequate representation needs to be made. *Id.; see Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2nd Cir. 2001) (discussing *Trbovich*).

later designated as depleted. Plaintiffs challenge whether Mystic has met all criteria relevant to such a conclusion (depleted status). While Mystic has complied with these criteria and supports NMFS's judgment to that effect, the normal tension between the regulator (NMFS) and the regulated (Mystic) is always present, and Mystic sees the meeting of these criteria as an extra measure required by the permit, but going beyond what the law requires.[5] Furthermore, Plaintiff has confused this point by citing the case in which NMFS several years ago denied Georgia Aquarium a permit to import beluga whales from Russia under circumstances different from the circumstances present in this case (Plaintiff wrongly contends the circumstances are not different). See *Georgia Aquarium, Inc. v. Pritzker,* 135 F.Supp.3d 1280, 1287 (N.D.Ga. 2015) (affirming NMFS order denying a permit requested by Georgia Aquarium to import beluga whales collected from wild off the coast of Russia "for purposes of public display" – the present case involves a permit for scientific research and belugas born in human care from parent(s) collected from the coast of Russia before NMFS designated belugas in those waters as "depleted").

The leading Second Circuit case on the inadequacy of representation element issue in the context of intervention as of right by a regulated party to support the regulator's decision is *N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of the State of New York,* 516 F.2d 350, 352 (2nd Cir. 1975). There, the Court held that pharmacists benefiting from a state regulation prohibiting advertising of prescription drug prices were entitled to intervene as of right in lawsuit against the New York regulatory agency seeking declaratory ruling that the advertising regulation was unconstitutional. *Id*. The Court reasoned the pharmacists' knowledge of and participation in the prescription drug business gave them the incentive and ability to present the economic benefits

[5] Over Mystic's objection, NMFS decided to treat the captive-born belugas being imported in this case as being part of the "depleted" stock. Then NMFS found Mystic satisfied the MMPA standard for importing members of a depleted stock of marine mammals. ECF Doc. 22-2, p. 5 ("For purposes of this permit application, NMFS has treated all five whales as depleted.") and p. 22 (standard satisfied).

of the challenged regulation of their industry more clearly than the regulator could. *Id*. Here, as discussed below, Mystic as an aquarium that actually transports, houses, cares for, and studies belugas is well-positioned to argue the technical, scientific and animal care aspects of the case, as compared to the Federal Defendants, who do not engage in these activities themselves.[6] *See* Coan Dec. ¶¶ 5, 8-10. This consideration goes to both the second and third factors of the *Pruitt* inquiry.

Mystic is best equipped to answer many of the claims that Plaintiffs raise. For example, in their preliminary injunction briefing, Plaintiff asserts that NMFS lacks an interest in the scientific research that Mystic seeks to conduct and that NMFS will not suffer harm if a preliminary (or by logical extension a permanent injunction) is granted. Plaintiff's assertion demonstrates the need for Mystic to be a party because of the Government's inability to adequately represent Mystic's narrow interest in conducting this beluga research:

> NMFS has little – if any – vested interest in whether the import of the belugas to a private facility is stayed. The federal government does not stand to gain anything from the Permit, the import, or the proposed scientific research. *See Born Free USA v. Norton*, 278 F.Supp.2d 5, 26 (D.D.C. 2003) (holding that federal agencies are "detached government bodies that do not, as a practical matter, stand to gain or lose based on [whether elephants were allowed to be transported to zoos] as a result of the Court's preliminary injunction decision.").

---

[6] Similarly, when the United States sued Connecticut's Department of Public Utility Control ("DPUC") to enjoin DPUC's order opening an investigation of whether phone companies illegally disclosed calling records to federal law enforcement agencies, this Court granted intervention to the ACLU and other parties who had successfully petitioned the DPUC to open the investigation. *U.S. v. Palermino*, 238 F.R.D. 118, 123 (D.Conn. 2006) ("while the DPUC is a neutral state-established adjudicative body seeking to clarify the outer bounds of its authority and to exercise such authority accordingly, the ACLU-CT and the [Office of Consumer Counsel] seek to protect individuals and consumers generally from improper disclosure of their personal telecommunications activities"). More recently, in *Connecticut Fine Wine & Spirits, LLC v. Harris*, No. 16-CV-1434 (JCH),2016 WL 9967919 at *8 (D. Conn. Nov. 8, 2016), this District granted intervention to wholesalers of alcoholic beverages who benefited from state regulation of pricing in a lawsuit against the regulator filed by other vendors which opposed to the regulation. These cases would support intervention as of right in this situation and even more strongly support permissive intervention.

Plaintiffs' PI Mem. at 30-31 (ECF 17-1). Presumably Plaintiff will assert the same argument in seeking permanent injunctive relief. As the holder of the scientific research permit at issue, Mystic obviously has the "vested interest" in the scientific research with belugas that Plaintiffs assert the Federal Defendants lack. *See* Coan Dec. ¶¶ 8-10, 12, 16-17. Because Mystic has a vested interest in defending against the injunctive relief that Plaintiffs seek not shared by the Federal Defendants, it follows from Plaintiffs' line of attack that the Federal Defendants may not adequately represent Mystic's vested interest, and that Mystic needs to appear in the case to describe and defend its unique vested interests.

The case Plaintiff cites in the passage of its preliminary injunction brief quoted above (*Born Free USA*, 278 F.Supp.2d at 26) is instructive. There, environmental organizations sued the U.S. Fish & Wildlife Service ("FWS"), seeking to enjoin a permit from FWS allowing the San Diego Zoo and Lowry Zoo to import elephants from Swaziland. 278 F.Supp.2d at 9-10. The district court, by consent, permitted the zoos to intervene as defendants to defend their animal import permits. In resolving the environmental plaintiff's motion for preliminary injunction, Judge Bates initially agreed with the plaintiffs that the federal defendants were "detached governmental bodies that do not, as a practical matter, stand to gain or lose based on what happens to the elephants as a result of the Court's preliminary injunction decision." *Id*. at 27. However, in his next breath, Judge Bates held that the defendant-intervenor zoos "undoubtedly have an interest in importing the elephants" and that "the potential harm to the zoos from an injunction is quite significant." *Id.* There, it was held that the presence of the zoos as intervenors made a difference.

Plaintiff has acknowledged that Mystic's interests are relevant, yet it argues that a preliminary injunction would not harm Mystic's interests in scientific research (as envisioned by Plaintiff). Plaintiff.PI.Mem. at 30. The Federal Defendants, in their response, understandably do

not attempt to defend Mystic's interests in the balancing of harms, or to argue on behalf of Mystic in any way. *See* Fed.PI.Opp. at 38-40. That leaves Mystic to vindicate its interests and, more importantly, to explain how the bests interests of the beluga whales coincide with Mystic's interests. While Mystic, as discussed in Point II below, seeks only limited participation in resolution of the pending preliminary injunction motion, the same issues the parties have brought up in arguing for/against preliminary injunction relief will likely arise again with respect to the permanent injunction and declaratory relief sought by Plaintiff, including any appeal by either side of the denial or grant of preliminary injunctive relief. *See Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (the government "is not charged with a duty to represent these asserted [narrower intervenor] interests in defending against the issuance of an injunction.").

Plaintiffs go on to assert that the belugas will be harmed by transport, citing a recently-signed affidavit from its purported expert witness. Of note, this affidavit was executed after the granting of the permit at issue and thus is not part of the administrative record. Plaintiff.PI.Mem. at 17-18 (citing Frohoff Decl. dated September 5, 2020). As a zoological institution housing three belugas under professional accreditation and under the care of veterinary scientists experienced in transporting whales for conservation purposes, Mystic is necessarily better-equipped than the Federal Defendants to discuss the nuances of transporting belugas. *See* Coan Dec. ¶¶ 5-10. To Mystic's knowledge, none of the individuals working at NMFS who worked on Mystic's beluga permit application have ever cared for or transported a beluga whale.[7] Mystic has that unique expertise, and can effectively supplement NMFS's defense in the case.

[7] The Federal Defendants do employ a veterinarian who, during her past employment for zoological institutions, supervised the transport and captive maintenance of "dolphins and whales, as well as seals, sea lions, sea turtles, sea otters, and sea birds" and have appropriately submitted her insightful declaration. ECF Doc. 23-3 ¶ 2 (Decl. of Deborah Fauquier, DVM, MPVM, PhD). This is relevant experience, but it

Mystic is also well equipped to supplement the Federal Defendants' argument on another important issue, the dangers to the beluga whales in question that stem from leaving them in the at Marineland in Canada, which is at its maximum capacity for beluga whales according to the animal use and care committee there. *See* Coan Dec. ¶ 19. Mystic has a contract with Marineland for the acquisition and delivery of the belugas and has direct contact with Marineland, and can speak directly to the Court on this issue, including if conditions at Marineland change. *Id.*, ¶ 20. By contrast, the Federal Defendants have no jurisdiction over Marineland in Canada and are dependent on getting information indirectly from participants in the agency proceeding. *See* Federal.PI.Opp. at 38 (reviewing filings by third parties to support the conclusion in the Federal Defendants' brief that Marineland is overcrowded). Further, the conditions at Marineland and the health of the animals there are evolving constantly and there may well be need and good cause to supplement the administrative record with new post-decision information.

Regarding the legal standard for importing members of a depleted species, Plaintiff goes on to survey and critique arguments Mystic successfully made to NMFS during the permit proceeding. *See* Plaintiff.PI.Mem. at 27 ("Mystic Aquarium did not meet its burden of showing that the research could not be accomplished using a stock of beluga whales that is not designated as depleted.") and 28 ("Mystic Aquarium contends that the research can be used 'to study the MMPA-depleted belugas from the Sakhalin Bay-Nikolaya Bay-Amur River in addition to beluga populations worldwide."). While the Federal Defendants may do their best to respond to Plaintiff's assertions, ultimately, Mystic is the entity best positioned to respond to Plaintiffs' arguments about Mystic's contentions and objectives.

---

is not the same as having direct experience on the transport of beluga whales and the social structure of belugas in human care, which Mystic has. *See* Fauquier Decl. ¶¶ 13-14 (relying on Mystic's comments for information regarding transporting belugas, and finding it comports with her experience with "cetaceans").

Finally, it should be noted that federal courts hearing lawsuits for judicial review of decisions by wildlife regulators granting or denying permits to zoos, aquariums, and other animal research institutions, generally allow intervention, whether as-of-right or permissively, and usually (but not always) by consent. *See, e.g.*, *Animal Legal Defense Fund v. U.S. Dept. of Agric*., No. 12-4407-SC, 2012 WL 12965890, ** 1-2 (N.D.Cal. 2012) (aquarium displaying marine mammal granted intervention as-of-right by consent in lawsuit challenging regulator's decision to continue licensure to exhibit marine mammals to public); *New England Anti-Vivisection Society v. U.S. Fish & Wildlife Service*, 208 F.Supp.3d 142, 152 (D.D.C. 2016) (Yerkes Primate Research Center granted intervention as-of-right by consent to defend federal permit it obtained export chimpanzees to England);[8] *Born Free USA v. Norton*, 278 F.Supp.2d 5, 26 (D.D.C. 2003) (zoos granted intervention-as-of-right to defend permits to import elephants from Swaziland);[9] *Georgia Aquarium, Inc,,* 309 F.R.D. at 691 (granting permissive intervention, over objections, in a procedural setting virtually indistinguishable from this case)

In short, Mystic meets the criteria for permissive intervention under Fed. R. Civ. P. 24(b) and no party opposes that intervention. Intervention should be granted.

## II. THE COURT SHOULD ALLOW MYSTIC TO PARTICIPATE IN RESOLUTION OF THE PRELIMINARY INJUNCTION MOTION

Counsel for Mystic and counsel for Plaintiff were able to resolve all issues regarding Mystic's intervention except whether Mystic should be allowed to participate in the adjudication of Plaintiff's motion for a preliminary injunction filed December 3, 2020. Plaintiff contends that the Court has already set a schedule reducing the standard 21-day period in which to file responses to

8 Order, ECF Doc. 15, Case No. 1:16-cv-00149-KBJ (D.D.C. April 29, 2016).

9 Earlier in the *Born Free USA* litigation, the District Court had granted the zoos intervention on consent. Case No. 1:03-cv-01497-JDB (minute docket entry July 10, 2003 – one must check the "view multiple documents" box to see this docket entry on PACER).

a preliminary injunction motion, and that it is too late for Mystic to file an opposition pleading in compliance with the reduced time periods. *See* Local Rule 27, *see also*, ECF Doc. 21 (minute entry reducing response time). The preliminary injunction hearing is set for oral argument next Monday on December 21, 2020.

Plaintiff's procedural argument is misplaced, particularly given the limited participation Mystic seeks at the preliminary injunction hearing. Mystic's intervention comes well within the 21-day period that would normally be available for the filing of opposition briefs. *See* D. Conn. L.R. 7(a)(2). Here, the shortened response date (December 11) came shortly after the order reducing response time (December 8), and Mystic did not have an opportunity to participate in the hearing during which the schedule was set.

As for Plaintiff's contention that Mystic could have avoided this problem by intervening earlier, there was no particular need to file a motion to intervene until Plaintiff filed for preliminary injunctive relief on December 3, 2020 because no substantive motions were pending. Plaintiff waited for three months after filing its Complaint before seeking a preliminary injunction motion on December 3, 2020, and must live with its December 3, 2020 filing date for purposes of evaluating the timeliness of Mystic's request to participate in the injunction hearing. As noted above, the Federal Defendants' Rule 12 responsive pleading has not yet been filed. It is ordinarily efficient for an applicant for defendant intervenor status to consider the governmental defendant's responsive pleading in preparing a motion to intervene, as doing so will assist the applicant intervenor by framing the issues, thereby allowing the applicant intervenor to better address inadequacy of representation and other intervention issues in its motion to intervene, and to better prepare its own proposed responsive pleading under Fed. R. Civ. P. 24(c). Here, the Federal Defendants' Rule 12 responsive pleading was due December 16, 2020, which has been extended to January 6, 2021.

Mystic's intervention filing is timely with respect to the preliminary injunction motion in particular, and not just with respect to the case in general.

If the preliminary injunction motion is argued on December 21, 2020, Mystic seeks only limited participation in the resolution of that motion. Mystic's counsel was engaged just last week and is studying the record and is not yet prepared to file a substantive brief in opposition to the preliminary injunction motion, so Mystic has no option other than to rely on the Federal Defendant's brief. Mystic instead asks that the Court:

(a) Consider this motion to intervene as an informal response to the preliminary injunction motion, as it provides a very limited rebuttal of select arguments in Plaintiffs' preliminary injunction motion not adequately addressed in the Federal Defendants' opposition to that motion;

(b) Allow Mystic to participate in the preliminary injunction oral argument to the limited extent of appearing and being available to answer any questions the Court might have;

(c) Allow Mystic to rebut any incorrect factual information presented by Plaintiff in its reply brief or by any party at oral argument,

(d) Note Mystic's agreement with the Federal Defendants' opposition to the motion; and

(e) Hear Mystic on any scheduling matters.

Should oral argument be postponed significantly past December 21, 2020, there would be time for Mystic to prepare and file an opposition brief and Mystic would seek the opportunity to do so, but Mystic is not asking for postponement of the hearing date obtained by Plaintiff. *See Allco Finance Ltd.*, 300 F.R.D. at 88 (intervenor should not delay resolution of the case).

**CONCLUSION**

The Court should grant Mystic's unopposed motion for intervention and should grant Mystic the opportunity (over Plaintiff's objection) to participate to the limited degree stated above in the preliminary injunction hearing.

Respectfully submitted,

THE PROPOSED DEFENDANT-INTERVENOR
SEA RESEARCH FOUNDATION, INC.
D/B/A MYSTIC AQUARIUM

By: /s/ Jeffrey M. Sklarz
Lawrence S. Grossman (ct15790)
Jeffrey M. Sklarz (ct20938)
Green & Sklarz, LLC
One Audubon Street, 3rd Floor
New Haven, CT 06511
Phone: (203) 285-8545 x101
Fax: (203) 823-4546
lgrossman@gs-lawfirm.com
jsklarz@gs-lawfirm.com

James H. Lister (DC Bar 447878) *
Nicole M. Bayne (CA Bar 328392) *
Birch, Horton, Bittner, & Cherot, P.C.
1100 Connecticut Ave., NW, Suite 825
Washington, D.C. 20036
(202) 659-5800
jlister@dc.bhb.com

*Of Counsel*
**Application for pro hac vice status pending.*

*Counsel for Applicant Defendant-Intervenor*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, a copy of the foregoing was served by CM/ECF and/or mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Date: December 17, 2020

*/s/ Jeffrey M. Sklarz*