# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRIENDS OF ANIMALS, a non-profit corporation; <br><br> and <br><br> LAST CHANCE FOR ANIMALS, a non-profit corporation; <br><br> *Plaintiffs*, <br><br> v. <br><br> GINA RAIMONDO, in her official capacity as Secretary of Commerce; <br><br> and <br><br> NATIONAL MARINE FISHERIES SERVICE, an agency within the United States Department of Commerce; <br><br> *Defendants*, <br><br> and <br><br> SEA RESEARCH FOUNDATION, INC. <br><br> *Defendant-Intervenor* | No. 3:20-cv-01312-AWT <br><br><br><br> **SUPPLEMENTAL REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br><br> April 28, 2021 |

The Court should reject Defendants' continued efforts to make novel arguments about why Plaintiffs lack standing. *See* ECF 79 and ECF 80. Of course, the Court need only reach Defendants' arguments if it determines that Friends of Animals (FoA) does not have standing, but that Last Chance for Animals (LCA) does have standing. *See* ECF 79 at 1 (citing *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)). Because, as Plaintiffs have previously argued, FoA does have standing, *see, e.g.*, ECF 68 at 3-5, 7-11, the Court need not even reach this issue.

If it does reach this issue, the MMPA's 60-day provision does not apply to LCA and thus does not prohibit the Court from finding that LCA has standing. Federal Defendants misunderstand Plaintiffs' position when they write "[e]ven assuming that joining an amended complaint as a new plaintiff is equivalent to filing a petition for review . . . ." ECF 79 at 2. But LCA joining the timely-filed lawsuit filed by FoA is not equivalent to filing a new petition for review. First, the MMPA does not set any time limits for interested parties joining an existing petition for review; it merely requires that "[s]uch review . . . be initiated . . . within sixty days," 16 U.S.C. § 1374(d)(6), which is exactly what occurred here. Second, an additional plaintiff joining an existing lawsuit does not implicate the same concerns as filing a petition for review more than 60 days after issuance of a permit, the latter of which would deprive NMFS of notice that the permit was being challenged.

Here, Defendants had full notice of Plaintiffs' claims when FoA initiated this lawsuit one week after the issuance of the Permit. Defendants do not even claim to have been prejudiced by LCA's joining of that lawsuit more than 60 days later. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554-55 (1974) (holding that when, "[w]ithin the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation . . . . the imposition of a time bar would not . . . promote the

1

purposes of the statute of limitations . . . ."). There is no way Defendants could have been prejudiced by LCA joining the lawsuit, especially since the claims did not change.

Federal Defendants dismiss Mystic's intervention in this lawsuit more than 60 days after the Permit was issued as "irrelevant because the MMPA does not set any time limit for intervention by a permit applicant in a lawsuit challenging that permit." ECF 79 at 2. But the MMPA also does not set any time limit for a permit opponent to join a lawsuit filed within 60 days of the permit being issued. *See* 16 U.S.C. § 1374(d)(6). Federal Defendants argue that the MMPA's language should bar permit opponents from joining an existing lawsuit after 60 days (even though, significantly, neither Federal Defendants nor Mystic advanced that argument when LCA was added), while at the same time allowing a party like Mystic to intervene at any time.

Defendants' conflicting interpretations appear nowhere in the statute and simply cannot be reconciled. The MMPA does not, as Federal Defendants imply, merely "require that parties opposed to the permit seek judicial review within 60 days of permit issuance," ECF 79 at 2; it also requires that "[a]ny applicant for a permit" initiate judicial review within 60 days. 16 U.S.C. § 1374(d)(6). Defendants' theory that the MMPA statute of limitations also applies to parties joining a lawsuit cannot be correct or else Mystic would not have been able to intervene when it did. Because the MMPA does not prohibit parties from joining a lawsuit that was filed within 60 days of a permit being issued, the Court should reject Defendants' tortured standing argument.

Even if the Court concludes that the 60-day provision would apply to an additional plaintiff like LCA, Defendants' challenge to LCA's standing still fails. The Amended Complaint would relate back under Fed. R. Civ. P. 15. *See* ECF 78 at 3 (citing cases).

Federal Defendants attempt to minimize the caselaw previously cited by Plaintiffs, *see* ECF 78 at 2-3, by observing that none of those cases involved the MMPA or lawsuits against the

United States. *See* ECF 79 at 2-3. But this criticism is misguided because none of Defendants' cases involve the MMPA. Defendants failed to articulate why the principles allowing relation back of a complaint amended as a matter of course would not apply to Plaintiffs' claims. As to the notion that waivers of the federal government's sovereign immunity are to be strictly construed, Defendants cite no case holding that the relation back analysis differs when the government is a party, and the Federal Rules make no such distinction. *See* Fed. R. Civ. P. 15. In fact, Rule 15(c)(1)(C), which allows relation back in certain circumstances when a defendant is changed, "was added in 1966 to respond to a recurring problem **in suits against the Federal Government**, particularly in the Social Security context." *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (emphasis added) (citing Advisory Committee notes).

Mystic inaccurately asserts that cases "uniformly conclude that relation back under Fed.R.Civ.P. 15(c) is unavailable when the original complaint failed to establish jurisdiction." ECF 80 at 2. Mystic not only ignores the Northern District of Florida case cited in Plaintiffs' brief, *see* ECF 78 at 3, but overlooks that relation back often cures jurisdictional defects, including the substitution of defendants, even when the initial inclusion of the wrong defendant deprived the court of jurisdiction. *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 164 (2d Cir. 2001) (citing Rule 15 to allow relation back "to cure the jurisdictional defect" when initial complaint "erred as a jurisdictional matter" by naming the wrong defendant). "Moreover, once subject matter jurisdiction is 'cured' by an amendment, courts regularly have treated the defect as having been eliminated from the outset of the action." *Id.* at 163.

Mystic fails to recognize that there is no need for the Court to consider whether the original Complaint established jurisdiction because "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to

3

determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007). Defendants confuse the facts with the pleadings, overlooking that "[t]he state of things and the originally alleged state of things are not synonymous." *See id.* at 473. Because LCA had standing when the original Complaint was filed, *see* ECF 78 at 2 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)), the Court should only look to the Amended Complaint to determine jurisdiction. For this reason, Mystic's attempts to distinguish the cases cited by Plaintiffs by arguing that none allowed relation back when the original complaint did not establish jurisdiction, ECF 80 at 1-2, are misguided.

Moreover, all of the cases cited by Mystic involved discretionary leave to amend complaints, rather than the amendment as a matter of right that Plaintiffs filed here. *See, e.g.*, *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983); *Maliandi v. Montclair State Univ.*, No. 14-01398 (SRC), 2017 U.S. Dist. LEXIS 110334, at *3, *13 (D.N.J. July 17, 2017). Mystic also cites dicta from *Salazar v. U.S. Postal Serv.*, 929 F. Supp. 966 (E.D. Va. 1996), where the plaintiff had not amended her complaint as a matter of right, so the court had to decide whether to allow her to amend. *Id.* at 970 (denying motion to dismiss). *Austin v. Trandell*, 207 F. Supp. 2d 616 (E.D. Mich. 2002), is not instructive because it involved multiple amended complaints requiring leave of court, and the plaintiffs had not satisfied the statutory prerequisite for their initial complaint, so jurisdiction was lacking under the facts existing at the time of the initial complaint. *Id.* at 619-21, 624-25.

Without citing any caselaw relating to the MMPA or NEPA, Federal Defendants contend that the Court should also apply their interpretation of the MMPA's 60-day provision to Plaintiffs' NEPA claim. Federal Defendants try in vain to distinguish *Jones v. Gordon*, 792 F.2d 821 (9th Cir. 1986), which held that the MMPA's 60-day provision "does not purport to govern

4

all challenges to [MMPA] section 104 permits" and does not apply to a claim that NMFS "violated the *procedural* requirements of NEPA," even if that "procedural claim may indirectly implicate some of the terms and conditions of the permit." *Id.* at 824 (emphasis in original).

Contrary to Defendants' argument, Plaintiffs do not "effectively challenge the substance of the Permit through their NEPA claims." ECF 79 at 4. Rather, Plaintiffs challenge whether NMFS complied with the procedural requirements of NEPA. Plaintiffs' NEPA claim differs significantly from their MMPA claim. True, Plaintiffs challenged the insufficiency of the Environmental Assessment's (EA) analysis of the effects of the Permit on wild belugas, but this is hardly "essentially the same challenge," *id.*, as the separate argument that Mystic failed to meet its burden under the MMPA of demonstrating that the Permit will not lead to the taking of additional belugas. Plaintiffs' NEPA claim also alleges that NMFS violated NEPA by failing to take a hard look at the full environmental consequences of the Permit because the EA that it conducted failed to analyze the social harms of removal and the risks of COVID-19; minimized and made erroneous conclusions about the harms of transport; and was not the result of public comments. *See* ECF 61-1 at 29-40. These issues are distinct from whether the Permit complies with the MMPA.

Federal Defendants also advance a curious argument that Plaintiffs' NEPA claim is "artful pleading" intended to circumvent the MMPA's 60-day provision. *See* ECF 79 at 4-6. Federal Defendants do not explain how a claim that FoA pleaded in detail only a week after the Permit was issued, *see* ECF 1 at ¶¶ 93-103, ¶¶ 152-156, could have been an attempt to evade a provision that could not possibly have applied. For this and other reasons, *Blue Water Fishermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 158 F. Supp. 2d. 118 (D. Mass. 2001), is not analogous. In that case, plaintiffs initially filed their complaint for preliminary injunctive relief

5

more than 30 days after the agency issued the regulations at issue under the Magnuson-Stevens Act (MSA). *See id.* at 119, 121 n.12. Problematically for plaintiffs in that case, the MSA both prohibits preliminary injunctive relief and has a 30-day statute of limitations. *Id.* at 121 (citing 16 U.S.C. § 1855(f)(1)). Because the MSA clearly barred plaintiffs' desired relief, they instead sought to characterize their lawsuit as a challenge to a biological opinion under the Endangered Species Act (ESA), but the court held that plaintiffs had no viable cause of action under the ESA. *See id.* at 121-22. In contrast, here FoA initially brought its claims within the MMPA's statute of limitations, and Plaintiffs do have a viable cause of action under NEPA. Similarly, *Sea Hawk Seafoods, Inc. v. Locke*, 568 F.3d 757 (9th Cir. 2009), is distinguishable because there, plaintiffs challenged a regulation promulgated under the MSA, and sought to evade the MSA's statute of limitations by characterizing their action as a failure to act under the Administrative Procedure Act. *See id.* at 766. Here, Plaintiffs brought two independent claims under two separate statutes—the MMPA and NEPA. Contrary to Federal Defendants' belief that NMFS's failure to consider the social harms of the Permit "should have been brought" under the humaneness requirement of the MMPA regulations, ECF 79 at 4, NMFS's failure to analyze those impacts in the EA can only be challenged under NEPA. *See Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 19 (2d Cir. 1997) ("NEPA is a procedural statute . . . . Our task is to ensure NEPA compliance with the environmental policies and the law . . . .").

      Both FoA and LCA have standing to assert their claims. The MMPA's 60-day provision does not apply to LCA because this petition for review was initiated within 60 days. Even if this provision did apply to LCA, the Amended Complaint would relate back. There is no need for the Court to determine whether it had jurisdiction when the original Complaint was filed; it need only determine whether it has jurisdiction now.

Respectfully submitted,

/s/ *Stephen R. Hernick*
Stephen R. Hernick (phv10846)
Friends of Animals, Wildlife Law Program
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112
Tel: 720-749-7791
Fax: 888-236-3303
SHernick@friendsofanimals.org

Jessica Rubin (Bar No. ct13768)
Director of Legal Practice and Animal Law Clinic
University of Connecticut School of Law
55 Elizabeth Street
Hartford, CT 06105
Tel: (860) 570-5209
Fax: (860) 570-5366
Jessica.rubin@uconn.edu

*Attorneys for Plaintiff Friends of Animals*

/s/ *David A. Ball*
David A. Ball (Bar No. ct10154)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Tel: (203) 337-4134
Fax: (203) 337-5534
dball@cohenandwolf.com

*Attorney for Plaintiff Last Chance for Animals*