## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRIENDS OF ANIMALS, a non-profit corporation; <br><br> and <br><br> LAST CHANCE FOR ANIMALS, a non-profit corporation; <br><br> *Plaintiffs*, <br><br> v. <br><br> GINA RAIMONDO, in her official capacity as Secretary of Commerce; <br><br> and <br><br> NATIONAL MARINE FISHERIES SERVICE, an agency within the United States Department of Commerce; <br><br> *Defendants*, <br><br> and <br><br> SEA RESEARCH FOUNDATION, INC. <br><br> *Defendant-Intervenor* | No. 3:20-cv-01312-AWT <br><br><br><br><br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO VOLUNTARILY DISMISS ALL CLAIMS WITH PREJUDICE** <br><br><br><br><br> June 4, 2021 |

## INTRODUCTION

Pursuant to Federal Rule 41, Plaintiffs move to dismiss all claims of the Second Amended Complaint with prejudice because this case is now moot. Plaintiffs brought this case to prevent an import of five beluga whales from Canada to Mystic Aquarium ("Mystic"). After the Court denied Plaintiffs' Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction, Mystic transported all five beluga whales to its facility on May 14 and 15, 2021. Mystic transported the beluga whales even though the Court had not yet issued its written decision granting Defendants' motions for summary judgment, and Plaintiffs therefore had no opportunity to appeal the ruling prior to the transport. Accordingly, at this point, no court could reverse Mystic's action and order the return of the beluga whales to Marineland. As such, this case is now moot, and this Court lacks jurisdiction over it. Mootness alone requires dismissal.

Even setting that aside, dismissal would be warranted because Plaintiffs seek a dismissal with prejudice. As a dismissal with prejudice would preclude Plaintiffs from relitigating their claims, Defendants would not be prejudiced by such a dismissal. In fact, denying this Motion and continuing this case against Plaintiffs' wishes when no effective relief is available would unduly prejudice Plaintiffs. Thus, there is no reason why Plaintiffs' Motion should not be granted.

Plaintiffs are incredulous that they are forced to bring this Motion. Plaintiffs agreed to stipulate to a dismissal of all claims with prejudice. However, Mystic refused to agree to a dismissal with prejudice. Instead, Mystic tried to leverage its consent on a stipulation of dismissal to get Plaintiffs to agree not to challenge certain aspects of future permits it may apply for. But any future permits, even a de facto "renewal" of the current permit, would require a new application and approval by the federal government. Plaintiffs, of course, could challenge any aspect of such future permits that they believe violates the law, regardless of the outcome of this case. Plaintiffs are unwilling to agree to Mystic's effort to have Plaintiffs relinquish their rights

1

to make certain future challenges. Dismissal with prejudice is the appropriate result in these circumstances.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Friends of Animals filed this case on September 3, 2020, seeking to vacate a permit issued to Mystic (the "Permit") to prevent the import of five beluga whales from Canada. *See* ECF No. 1. After Mystic submitted a breeding prevention plan, which was the last thing standing in the way of the federal government allowing the import, Friends of Animals filed a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction. *See* ECF No. 16 & ECF No. 17. After the Motion for a Preliminary Injunction was fully briefed, Mystic agreed not to move the belugas until April if the parties could brief and argue their summary judgment motions before then, obviating the need for the Court to decide the Motion for a Preliminary Injunction. *See* ECF No. 42.

Plaintiff Last Chance for Animals joined the case, and Plaintiffs filed an Amended Complaint on January 27, 2021. *See* ECF No. 54. The parties briefed cross motions for summary judgment during February and March. *See* ECF No. 61, ECF No. 62, ECF No. 64, etc. Following briefing, the Court held a hearing during which it announced that it intended to deny Plaintiffs' Motion for Summary Judgment and grant the Defendants' motions for summary judgment. *See* ECF No. 77. The Court subsequently denied the Motion for a Temporary Restraining Order and the Motion for a Preliminary Injunction on March 26, 2021. *See id*.

Mystic then made this case moot when it chose to import the five belugas from Canada last month. Plaintiffs learned on May 11, 2021 that Canada had granted a permit to export the whales from Marineland to Mystic. *See* Joe Wojtas, UPDATED: *Canada approves permit to export beluga whales to Mystic Aquarium*, The Day (May 11, 2021), available at https://www.theday.com/article/20210511/NWS01/210519874. Officials from Mystic were

already in Canada to export the belugas before the Canadian government informed the public that it had granted an export permit. *See id.* Mystic imported the five belugas in two separate transports on May 14 and 15, 2021. David Abel, *A long and fraught migration: Mystic Aquarium airlifts beluga whales as advocates protest their confinement*, Boston Globe (May 15, 2021), available at https://www.bostonglobe.com/2021/05/15/metro/different-kind-journey-these-migratory-whales-including-planes-cranes-tractor-trailers/. As soon as the belugas arrived at Mystic, Mystic's CEO told the press that Mystic hopes to persuade the government to remove any breeding restrictions in five years: "Five years is a long way away." *See id.*

On Monday, May 17, Plaintiffs' counsel emailed counsel for the Defendants, asking if the Defendants were willing to sign a stipulation of dismissal with prejudice in light of Mystic importing the belugas and Plaintiffs' belief that the case is now moot. *See* Exhibit A. Upon inquiring again, after counsel for Defendants did not respond for 48 hours, Federal Defendants indicated that they would need until Friday to determine their position. *See id*. Shortly thereafter, Mystic also requested to have until Friday to respond. *Id.*

That Friday, counsel for Mystic claimed that the "Amended Complaint contains allegations regarding the terms for incidental public display and other permit conditions . . . ." Exhibit B. Mystic asked Plaintiffs to "stipulate and agree that they will not raise these same claims at the time of permit renewal in 4.5 years or at the time of any subsequent permit renewal." *Id.* Counsel for Plaintiffs responded that Plaintiffs did not see how Mystic's proposed stipulation related to the mootness of the pending lawsuit and would not agree to not challenge certain conditions of a hypothetical "renewal" of the Permit, which would be a separate federal action. *See id.* Mystic's position was also puzzling because there can be no "renewal" of the Permit; if Mystic wishes to continue this research beyond the five-year-term, it must "apply for a

new permit one year prior to this permit's expiration." AR 000001. Plaintiffs' counsel reiterated that Plaintiffs were offering to dismiss their claims with prejudice, which would necessarily preclude them from litigating "these same claims" again, and further agreed that they would stipulate not to argue that the belugas should be returned to Marineland. Exhibit B.

Mystic was not satisfied. While Mystic's counsel claimed that Mystic was not trying to obtain any additional relief by way of stipulation that it could not expect to receive in a decision from this Court, Mystic insisted that Plaintiffs "stipulate that they would be precluded from attacking permit renewal on any basis that has already been briefed and argued by plaintiffs, e.g., incidental public display." *Id.* Plaintiffs responded and reiterated that they were not willing to relinquish future rights to challenge a hypothetical future permit based on new facts. *See id.* Plaintiffs again asked if Mystic would consent to a stipulation of dismissal in order to conserve judicial resources and to prevent a wholly unnecessary motion. *Id.* Mystic refused to agree to a stipulation and suggested that Plaintiffs file their motion. *Id.* Shortly thereafter, Federal Defendants responded as follows: "Given that Plaintiffs and Mystic have not reached an agreement on a stipulated dismissal, the government reserves its position until Plaintiffs file a motion to dismiss or such an agreement is reached." *Id.* Thus, Plaintiffs had no choice but to file this Motion.

## ARGUMENT

### A.  Because this case is now moot, the Court must dismiss it.

Article III section 2 of the Constitution grants the judicial branch authority to adjudicate "cases" and "controversies." U.S. Const. art. III, § 2. Thus, "courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (internal quotation omitted). The Supreme Court has repeatedly held that an actual controversy "must exist not only 'at the time the complaint is

filed,' but through 'all stages' of the litigation." *Id.* at 90-91 (quoting *Alvarez* v. *Smith*, 558 U.S. 87, 92 (2009)).

A moot case is no longer a "case" or "controversy" for purposes of Articles III. *Already, LLC*, 568 U.S. at 91. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quotation omitted). Courts have no jurisdictional authority to address moot cases and courts must thus dismiss cases that become moot. *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 105 (2d Cir. 1989).

To determine whether a case is moot, the "central question . . . is whether a change in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *AstraZeneca AB v. Impax Labs., Inc.*, 490 F. Supp. 2d 368, 374 (S.D.N.Y. 2007) (quoting 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3553.3 (2d ed. 1984)). In other words, "[t]he question is not whether the precise relief sought at the time of the application for an injunction was filed is still available. The question is whether there can be any effective relief." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 509 (2d Cir. 2005) (quotation omitted).

Dismissing the present case for lack of jurisdiction is consistent with a line of cases involving challenges to animal imports and transports. In *Born Free USA v. Norton*, the district court denied plaintiffs' motion for a preliminary injunction to prevent U.S. zoos from importing African elephants from Swaziland. *Born Free USA v. Norton*, 278 F. Supp. 2d 5, 8 (D.D.C. 2003). The zoos had already imported the elephants by the time the case reached appeal and thus, the D.C. Circuit held that the appeal was moot since plaintiffs' preliminary injunction solely sought "to halt the importation of the elephants" and the elephants had already "been imported into the United States." *Born Free USA v. Norton*, No. 03-5216, 2004 U.S. App. LEXIS 936, at

*2 (D.C. Cir. Jan. 1, 2004). Accordingly, the D.C. Circuit dismissed the case for lack of

jurisdiction, vacated the district court's denial of plaintiffs' preliminary injunction, and remanded

the case for further proceedings. *Id.* at *2-3 (noting that even on remand, "it is unclear, and

appellants have not specified with any detail, what partial remedy is appropriate now that the

elephants have been imported"). On remand, the parties entered a joint stipulation of dismissal

with prejudice. Parties' Joint Stipulation and Order of Dismissal, *Born Free USA*, No. 03-1497

(JDB), ECF No. 47 (D.D.C. Feb. 2, 2004), attached as Exhibit C. Notably, the stipulation did not

"bar plaintiffs from pursuing future and distinct claims concerning the care and treatment of the

same animals that arise out of future federal agency actions or private actions." *Id.*

Similarly, the Ninth Circuit dismissed as moot plaintiff's appeal of a district court's

denial of a motion for a preliminary injunction to prevent a zoo from transporting elephants

because the zoo had already transported the elephants. Order, *Elephant Just. Project v.

Woodland Park Zoological Soc'y, Inc.*, No. 15-35172, ECF No. 21 (9th Cir. Aug. 11, 2015),

attached as Exhibit D (citing *Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978)

("Where the activities sought to be enjoined have already occurred, and the appellate courts

cannot undo what has already been done, the action is moot.")). On remand the district court held

that the case was moot because the zoos had already transported the elephants and thus, there

was no longer a live controversy. Order Dismissing Case as Moot, *Elephant Just. Project*, No.

C15-0451-JCC, ECF No. 63 (D. Wash. Nov. 24, 2015), attached as Exhibit E.

Other courts have held that challenges to agency action to prevent harm to animals

become moot once that harm occurs. For example, where plaintiffs challenged removals of wild

horses, once those removals occurred courts dismissed the actions as moot because it was

"impossible for the court to grant any effectual relief whatever" since the removals of the

animals "cannot be undone." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 22 (D.C. Cir. 2005) (internal quotation omitted); *see also In Def. of Animals v. Salazar*, 713 F. Supp. 2d 20, 25 (D.D.C. 2010) (dismissing case as moot because "the gather that the plaintiffs challenge as unlawful has already taken place").

Here, it is undeniable that the present case is moot because the Court can no longer grant Plaintiffs any meaningful or effective relief. Plaintiffs challenged the issuance of the Permit to Mystic Aquarium to import five beluga whales from Marineland of Canada. ECF No. 54 at ¶ 2. Like in *Born Free USA*, the sole relief Plaintiffs sought was to halt the importation of the belugas to prevent harm caused by removal and transport. *See* ECF No. 54 (Prayer for Relief). After this Court indicated that it would rule in favor of the Defendants on the summary judgment motions and denied Plaintiffs' Motion for a Preliminary Injunction, Mystic imported the five belugas on May 14 and 15, 2021. No court is able to reverse this import or return the belugas to Marineland. Moreover, Plaintiffs did not argue that Mystic could import the belugas under different terms and conditions. Since the harm Plaintiffs sought to prevent already occurred and cannot be reversed, this Court can no longer grant Plaintiffs "meaningful" and "effective" relief. *See Moore*, 409 F.3d at 509; *AstraZeneca AB*, 490 F. Supp. 2d at 368. Accordingly, the Court must dismiss this case because the Court no longer retains jurisdiction over this moot action. *R.C. Bigelow, Inc.*, 867 F.2d at 105.

Plaintiffs' request for declaratory relief is not sufficient to keep this case alive because "[c]ourts must refrain from deciding abstract or hypothetical controversies and from rendering impermissible advisory opinions with respect to such controversies." *Earth Island Inst. v. Ruthenbeck,* 459 F.3d 954, 961 (9th Cir. 2006). "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the

case before them.'" *Zarda v. Altitude Express Inc.*, 883 F.3d 100, 110 (2d Cir. 2018) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotation omitted)). Accordingly, courts must only resolve controversies that are "real and substantial" and admit "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted).

Ruling on the merits of this case would constitute an impermissible advisory opinion based on hypothetical facts. *Id*. Mystic's decision to import the whales before the court issued an opinion leaves Plaintiffs with no possible relief, rendering the case moot. Deciding this case solely for declaratory purposes would make Article III's case or controversy requirement "meaningless." *See Nw. Env't. Def. Ctr. v. Allen*, No. 05-1279-AA, 2007 U.S. Dist. LEXIS 44004, at *5-6 (D. Or. June 13, 2007) (rejecting plaintiff's argument that declaratory relief should keep a case challenging a biological opinion alive when the agency withdrew the portion of the biological opinion at issue). Even a decision invalidating the Permit would offer Plaintiffs no relief and would thus constitute an impermissible advisory opinion.

Defendants asked Plaintiffs to "stipulate and agree that they will not raise these same claims at the time of permit renewal in 4.5 years or at the time of any subsequent permit renewal." Exhibit B. As an initial matter, Mystic may not "renew" this Permit. *See* AR 000001. Instead, to continue research on the whales after this Permit expires, Mystic must apply for a "new permit." *Id.* Further, any transport of "the imported whales to Georgia Aquarium and disposition of the whales at the termination of research must be approved by the Office Director." *Id.* The decision to grant a potential new permit in the future is undeniably a separate agency action, which would require Mystic to submit a new application and would be subject to

notice and public comment. 50 C.F.R. § 216.33(d), (d)(4); *see also* 50 C.F.R. § 402.02. Moreover, the mere possibility of a future permit "does not establish a basis for continuing jurisdiction" because a future permit does not constitute an "ongoing agency action for this court to review." *See Nw. Env't. Def. Ctr.*, 2007 U.S. Dist. LEXIS 44004, at \*6.

Further, even a very similar permit, a de facto "renewal" of this Permit "would be a separate federal action that would have different facts." *See* Exhibit B. Permit renewal decisions are affirmative agency actions that trigger procedural obligations under federal law. *W. Watersheds Project v. Interior Bd. of Land Appeals*, 624 F.3d 983, 985 (9th Cir. 2010) ("[A]gency action results in either the grant or denial of a permit--or its renewal or non-renewal-- which includes consideration of rangeland health and provides opportunity for interested parties to object."). The decision to grant this Permit does not constitute the same ongoing agency action as the speculative granting of a future permit renewal on the basis of unknown conditions and facts. *See Nw. Env't. Def. Ctr.*, 2007 U.S. Dist. LEXIS 44004, at \*6. Accordingly, any potential future permit or permit renewal would constitute a separate agency action and therefore is irrelevant to whether this case is moot.

## B. Defendants will not be prejudiced by a dismissal.

Even if the Court determines that it is not required to dismiss this case as moot, it should nevertheless dismiss this case. Federal Rule 41 allows a court to dismiss an action at the plaintiff's request. Fed. R. Civ. P. 41(a)(2). "Unless the order [to dismiss] states otherwise, a dismissal under this paragraph (2) is without prejudice." *Id.*

When a plaintiff moves to dismiss **without prejudice**, dismissal "will be allowed if the defendant will not be prejudiced thereby." *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (internal quotation omitted). Courts in the Second Circuit weigh five different factors in determining whether to grant a motion to dismiss without prejudice under Rule 41. *See Zagano*

9

*v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). "[T]he crucial inquiry in assessing a Rule 41(a)(2) motion is whether the defendant will suffer substantial prejudice as a result of a dismissal without prejudice." *Devito v. JP Morgan Chase Bank*, No. 3:19-cv-945-AWT, 2020 U.S. Dist. LEXIS 104035, at *7 (D. Conn. Jan. 31, 2020) (internal quotation omitted).

Here, however, because Plaintiffs seek dismissal **with prejudice**, the *Zagano* factors do not apply. "Generally, a defendant will be advantaged, rather than prejudiced, by a dismissal with prejudice." *United States v. $7,877.61 U.S. Currency*, No. 09-CV-6306P, 2016 U.S. Dist. LEXIS 128271, at *7 (W.D.N.Y. Sept. 20, 2016). As courts have noted,

> Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this. Consequently, no matter when a dismissal is granted, *it does not harm the defendant*: The defendant receives all that he would have received had the case been completed.

*Cent. N.Y. Laborers' Health & Welfare Fund. v. Fahs Constr. Grp.*, 170 F. Supp. 3d 337, 342 (N.D.N.Y. 2016) (emphasis in original) (quoting *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985)). "If the plaintiff moves for an order under Rule 41(a)(2) for voluntary dismissal, specifically requesting that the dismissal be with prejudice, it has been held that the district court must grant that request." *Cent. N.Y. Laborers'*, 170 F. Supp. 3d at 344 (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (3d ed. 2008)). Other courts have agreed that a court is without discretion and must grant a motion to dismiss with prejudice. *See, e.g.*, *Shepard v. Egan*, 767 F. Supp. 1158, 1165 (D. Mass. 1990) (noting the difficulties and refusing to "compel plaintiff to pursue a claim that she wishes to dismiss with prejudice").

Defendants will suffer no legal prejudice from a dismissal with prejudice. By definition, Plaintiffs would be unable to relitigate the claims that they brought in this lawsuit. Defendants would receive the best result that they presumably hoped for when this lawsuit was filed: they

will have prevailed in this case; the Permit will not be vacated; and Plaintiffs will not be able to challenge the Permit in the future. Mystic's desire that Plaintiffs agree not to challenge future permits is entirely unrelated to whether it would suffer legal prejudice from a dismissal with prejudice. It cannot be disputed that this Court is unable to rule on any future permits in this case.

Plaintiffs surmise that Mystic will argue in its opposition that it will be prejudiced by not receiving a written decision from this Court after expending resources to litigate this case. But that does not constitute legal prejudice that should prevent a dismissal under Rule 41. *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982) ("Plain legal prejudice, however, does not result simply when . . . plaintiff merely gains some tactical advantage."). "[T]he fact that the plaintiff may gain some tactical advantage from the dismissal, or that the defendant may miss an opportunity for a legal ruling are not sufficient reasons to deny a motion for voluntary dismissal." *Ctr. for Transp. v. Ga. Aquarium*, No. 1:05-CV-2790-CAP, 2006 U.S. Dist. LEXIS 110444, at *6 (N.D. Ga. June 13, 2006) (citing *Spencer v. Moore Bus. Forms, Inc.*, 87 F.R.D. 118, 119 (N.D. Ga. 1980)). A defendant does not suffer prejudice from the missed opportunity for a ruling, even when the dismissal is without prejudice. *See Ctr. for Transp.*, 2006 U.S. Dist. LEXIS 110444, at *6-7. Even assuming that Mystic would be harmed by a dismissal, its harm was entirely self-inflicted when it chose to import these belugas before letting this litigation play out. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950) ("If there is hardship in this case, it was preventable."). If Mystic valued a decision in this case so much, it could have waited to import the belugas, thereby preventing this case from becoming moot.

## C.  Plaintiffs would be unfairly prejudiced if this case were not dismissed.

Not only would Defendants **not** be prejudiced by a dismissal with prejudice, but Plaintiffs **would** be prejudiced by having to continue to litigate a moot case. Federal courts routinely vacate lower court decisions when an action becomes moot before an appeal can be heard.

11

"When a civil case becomes moot pending appellate adjudication, the established practice in the federal system is to reverse or vacate the judgment below and remand with a direction to dismiss." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (internal quotation and alterations omitted). "[V]acatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994). "[A] judgment from which litigants have the right of appeal should not be accorded preclusive effect when events beyond their control prevent them from exercising that right." *Penguin Books, USA, Inc. v. Walsh*, 929 F.2d 69, 73-74 (2d Cir. 1991). For example, in *Penguin Books*, an author and publisher sued for injunctive and declaratory relief to prevent harassment, which they claimed chilled their determination to publish a book. *Id.* at 71-72. After they won their desired declaratory relief following a trial on the merits, the defendants appealed. *Id.* at 72. Before that appeal could be heard, the plaintiffs published the book. *Id.* The Second Circuit, observing that the appeal had become moot, vacated the decision below. *Id.* at 73-74 ("Were we to maintain the district court judgment, we would be sanctioning conduct which manipulates procedure so as to make lower court judgments both binding and unreviewable. This, we are not willing to do.").

Here, following the summary judgment hearing, Plaintiffs had hoped to use their rights to appeal in an effort to prevent the import of these belugas. Because of Mystic's actions in unilaterally transporting the belugas and mooting this case, a successful appeal is no longer possible. If this case is not dismissed, the Court would presumably issue a written opinion on the pending cross motions for summary judgment. Plaintiffs would then be left with an untenable choice: let the opinion stand or expend resources to appeal a decision that is moot when no effective relief is available. Plaintiffs should not be forced into having to make such a choice.

12

**CONCLUSION**

Plaintiffs respectfully request that the Court dismiss this case with prejudice because it is moot. Even if the Court determines that this case is not moot, a dismissal with prejudice is warranted because the Defendants would not be prejudiced. On the contrary, denying this Motion would prejudice Plaintiffs by forcing them to litigate a case where no effective relief is available.

Respectfully submitted,

/s/ *Stephen R. Hernick*
Stephen R. Hernick (phv10846)
Friends of Animals, Wildlife Law Program
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112
Tel: 720-749-7791
Fax: 888-236-3303
SHernick@friendsofanimals.org

Jessica Rubin (Bar No. ct13768)
Director of Legal Practice and Animal Law Clinic
University of Connecticut School of Law
55 Elizabeth Street
Hartford, CT 06105
Tel: (860) 570-5209
Fax: (860) 570-5366
Jessica.rubin@uconn.edu

*Attorneys for Plaintiff Friends of Animals*

/s/ *David A. Ball*
David A. Ball (Bar No. ct10154)
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Tel: (203) 337-4134
Fax: (203) 337-5534
dball@cohenandwolf.com

*Attorney for Plaintiff Last Chance for Animals*

13